UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
VICTORIA MCMILLAN,

               Plaintiff,

        - against –

CAPITAL ONE BANK, N.A., CAPITAL
ONE BANK (USA), N.A., MELODY
YOUNG, CHINIKA MCDONALD,
YOLANDA REYES, THE CITY OF NEW
YORK, and NYPD LIEUTENANT
ANTHONY BURGIO,

              Defendants.
------------------------------X

**MEMORANDUM AND ORDER**

20 Civ. 7981 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

Plaintiff Victoria McMillan ("McMillan" or "plaintiff") brings this action against defendants Capital One Bank, N.A. and Capital One Bank (USA), N.A. (collectively, "Capital One"), three Capital One employees, the City of New York, and New York City Police Department ("NYPD") Lieutenant Anthony Burgio ("Lt. Burgio"). Plaintiff's First Amended Complaint asserts twelve causes of action arising from plaintiff's arrest at a Capital One bank on June 8, 2020. Presently before the Court is the motion of Lt. Burgio and the City of New York[1] (together, the "City Defendants") to dismiss all of plaintiff's claims against them, namely: (1) false arrest/false imprisonment under New York state

---

[1] This is the only motion before the Court. The other defendants have answered the complaint. See ECF No. 19.

law and 42 U.S.C. § 1983; (2) assault and battery under New York state law and 42 U.S.C. § 1983; (3) unlawful search under 42 U.S.C. § 1983; and (4) failure to intervene under 42 U.S.C. § 1983.  The Court heard oral arguments on the City Defendants' motion to dismiss on February 28, 2022.  For the following reasons, the City Defendants' motion is granted.

## I.   BACKGROUND

The pertinent allegations set forth in the First Amended Complaint (ECF No. 16) ("FAC" or "complaint"), which the Court accepts as true for the purposes of this motion, are as follows. Victoria McMillan is an African American woman who resides in Manhattan, New York and owns and operates a local beauty salon. FAC ¶ 29.  On June 8, 2020, McMillan, an accountholder and longtime customer of Capital One bank, visited a branch located at 175 West 72nd Street.  Id. ¶¶ 24, 31-35.  Upon being called to a teller's window, McMillan handed the bank employee her Capital One credit card and $500 in cash and asked the employee to use the cash to pay down a portion of her credit card balance.  Id. ¶ 36.  The employee told McMillan that she was unable to locate McMillan's name in the system or confirm that McMillan had a credit card account with the bank.  Id. ¶ 37.  McMillan expressed annoyance at this, telling the employee that she had the same Capital One credit

card for nearly thirteen years, and reiterated her transaction request.  Id. ¶ 38.  The employee asked McMillan for additional identification to complete the request.  Id. ¶ 39.  McMillan continued to express her annoyance but obliged, handing the employee her passport.  Id. ¶ 40.

After presenting her passport to the bank employee, McMillan stated that she also wanted to make a $4,800 cash withdrawal from her bank account.  Id. ¶ 41.  McMillan then passed the employee a note that stated:

> Withdrawal for $4,800. Hundreds Only Please
> No Balance Please
> Please count quietly. I will follow as you count.
> Thank you.

Id. ¶ 42.  After the teller received the note, she and two other bank employees reported to the NYPD that McMillan was attempting to rob the bank and requested a police response.  Id. ¶ 46.  Shortly thereafter, members of the NYPD arrived at the bank.  Id. ¶ 52. Upon arrival, the police officers confronted McMillan with firearms drawn, forcibly seized her, twisted her arms, and handcuffed her.  Id. ¶ 54.  Lt. Burgio was the senior officer on the scene and directed the activities of the other responding officers.  Id. ¶ 53.  The police searched McMillan but did not find any weapons or contraband.  Id. ¶ 62.

During this encounter, McMillan tried to explain to the police that she was merely attempting to conduct routine business transactions. Id. ¶ 59. However, the bank employees never told the officers that McMillan was a longtime customer of the bank, that McMillan had showed her passport to the bank teller, or that McMillan had given the bank teller cash to pay down her credit card. Id. ¶ 56. McMillan implored the officers to examine her Capital One credit card, her Capital One bank records showing that she had more than sufficient funds to cover her desired withdrawal, and the bank's security footage. Id. at 59. However, that evidence was in Capital One's possession and was not made available to the responding officers. Id. The only piece of information the officers learned at the scene was that McMillan was a local businesswoman, which they confirmed via an internet search. Id. ¶¶ 60-61.

Thereafter, the police officers brought McMillan to a precinct where she was placed in a holding cell. Id. ¶ 63. Once McMillan was detained, the officers reviewed the relevant evidence that Capital One possessed. Id. ¶ 64. After doing so, the officers released McMillan and declined to bring criminal charges. Id. ¶ 66. This lawsuit followed.

-4-

## II.  DISCUSSION

### A.  Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.  Where plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."  Twombly, 550 U.S. at 570.  In applying these standards, a court must accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor. Anderson News, L.L.C. v. Am. Media, Inc., 680 F.3d 162, 185 (2d Cir. 2012).  A court is not, however, "bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

### B.  False Arrest/False Imprisonment

Plaintiff first asserts claims of false arrest and false imprisonment under 42 U.S.C. § 1983 and New York state law.  "A § 1983 claim for false arrest, resting on the Fourth Amendment

right of an individual to be free from unreasonable seizures,
including arrest without probable cause, is substantially the same
as a claim for false arrest under New York law." Weyant v. Okst,
101 F.3d 845, 852 (2d Cir. 1996) (citations omitted).  Under New
York law, the "tort of false arrest is a species of false
imprisonment," the key elements of both being that a person is
confined without consent and that such confinement is not
justified.  Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d
Cir. 1995).  "The existence of probable cause to arrest constitutes
justification and is a complete defense to an action for false
arrest, whether that action is brought under state law or under
§ 1983."  Weyant, 101 F.3d at 852 (internal quotation marks and
citations omitted).

    "Probable cause is established when the arresting officer has
knowledge or reasonably trustworthy information sufficient to
warrant a person of reasonable caution in the belief that an
offense has been committed by the person to be arrested."  Harrison
v. County of Nassau, 804 F. App'x 24, 27 (2d Cir. 2020) (quoting
Singer, 63 F.3d at 119).  "When determining whether probable cause
exists courts must consider those facts available to the officer
at the time of the arrest and immediately before it, as probable
cause does not require absolute certainty."  Panetta v. Crowley,

460 F.3d 388, 395 (2d Cir. 2006) (internal quotation marks and citation omitted).  Consistent with these standards, the Second Circuit has repeatedly held that probable cause exists when a law enforcement officer receives information about a crime from a putative victim or eyewitness, "unless the circumstances raise doubt as to the person's veracity." Curley v. Village of Suffern, 268 F.3d 65, 70 (2d Cir. 2001); see, e.g., Stansbury v. Wertman, 721 F.3d 84, 90-91 (2d Cir. 2013); Panetta, 460 F.3d at 395; Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000).

The City Defendants maintain that there existed probable cause to arrest plaintiff because, as the FAC makes clear, three identified Capital One employees reported to the NYPD that plaintiff was attempting to rob the bank and requested that the officers respond to the scene.  City Defendants' Brief at 6-8 (ECF No. 23) ("Def. Br."); see FAC ¶ 46.  The Court agrees.  Reports from not one but three different bank employees, whose identities were known and who could "be held responsible if [their] allegations turn[ed] out to be fabricated," were sufficient to create probable cause to arrest plaintiff in the first instance. Florida v. J.L., 529 U.S. 266, 270 (2000); see Miloslavsky v. AES Eng'g Soc., Inc., 808 F. Supp. 351, 355 (S.D.N.Y. 1992) ("The veracity of citizen complainants who are the victims of the very

crime they report to the police is assumed."), aff'd 993 F.2d 1534
(2d Cir. 1993).   This is not the end of the inquiry, however,
because plaintiff maintains that any probable cause that may have
existed initially was negated before she was taken into custody.
Plaintiff raises two arguments in support of this contention.

Plaintiff   first   argues   that   the   arresting   officers
disregarded exculpatory evidence that cast doubt on the employees'
reports, thereby vitiating probable cause.   At oral argument, the
Court asked plaintiff for her best case on this point.   Plaintiff
identified Triolo v. Nassau County, 24 F.4th 98 (2d Cir. 2022), a
Section 1983 case for false arrest.[2]   The events at issue in Triolo
began with a 9-1-1 call made by Triolo's mother reporting that
Triolo and her other son were fighting.   Id. at 102-03.   The
responding officers took sworn statements by Triolo's mother and
brother claiming that Triolo had punched, grabbed, and choked them,
but the officers did not arrest Triolo, who had left the scene
with his wife by the time the officers arrived.   Id. at 103.
Rather, they issued a domestic incident report stating that no
offense had been committed and no physical injuries were visible.

---

[2] Triolo was decided after the conclusion of the parties' briefing on this
motion.   Since plaintiff did not supplement her briefing with a letter and
raised this case for the first time at oral argument, the Court permitted the
City Defendants to address it in a letter, which they submitted on March 4,
2022.   With the Court's permission, plaintiff submitted a response letter on
March 7, 2022.

Id.  The next day another incident occurred, after which Triolo's
wife reported to the police that Triolo had been attacked by his
brothers.  Id. at 103-04.  One of the responding detectives had
reviewed the prior day's sworn statements and domestic incident
report.  Id.  Despite protestations from Triolo's wife, an
eyewitness to the earlier events, that Triolo was the victim and
not the aggressor, and despite the fact that the domestic incident
report stated that no injuries were visible and no offense had
been committed, the detective arrested Triolo.  Id. at 104.

Triolo is clearly distinguishable.  First, Triolo arose from
an entirely different posture.  The case reached the Second Circuit
following the district court's denial of the defendant's motion
for judgment as a matter of law with respect to the jury's finding
that the arresting detective did not have probable cause to arrest
Triolo.  Id. at 104-05.  Affirming that portion of the district
court's decision, the Second Circuit observed that the "movant's
burden is particularly heavy where, as here, the jury has
deliberated in the case and actually returned its verdict."  Id.
at 105 (internal quotation marks and citation omitted).  No such
heightened burden is applicable here.

Second, Triolo is distinguishable on its facts.  In Triolo,
the district court upheld the jury's finding that there was no

probable cause to arrest Triolo because the arresting detective had disregarded "evidence sufficient to raise doubts" about the truthfulness of the mother's and brother's complaints. Id. at 104-05. The Second Circuit agreed, noting that "[f]aced with information that undermined the veracity of the alleged victims, [the detective] did not engage in further investigation to ensure the existence of probable cause." Id. at 107. In so holding, the Second Circuit explained that "**although [the detective] had no duty to seek it out**, [he] was not free to disregard the plainly exculpatory evidence that was presented to him." Id. at 107 (emphasis added); see also Garcia v. Does, 779 F.3d 84, 93 (2d Cir. 2015) ("[P]robable cause may be defeated if the officer deliberately disregards facts known to him which" exculpate the arrestee) (emphasis in original); Panetta, 460 F.3d at 395, 398 (explaining that while "an officer may not disregard plainly exculpatory evidence," "[o]nce an officer has probable cause, he or she is neither required nor allowed to continue investigating, sifting and weighing information").

Unlike in Triolo, here there was no exculpatory evidence presented to the arresting officers that triggered a duty to conduct an on-the-spot investigation prior to plaintiff's arrest. Plaintiff attempts to fit the square peg of this case into the

round hole of <u>Triolo</u> by alleging that the arresting officers could have obtained, "with little to no effort," three pieces of purportedly exculpatory evidence: plaintiff's Capital One credit card, her Capital One bank records, and the bank's security footage.   Plaintiff's Brief at 9 (ECF No. 25) ("Pl. Br."). However, even assuming, <u>arguendo</u>, that this evidence would have corroborated plaintiff's protestations of innocence, the FAC acknowledges that it was in the possession of Capital One and was never shared with the officers prior to plaintiff's arrest.  <u>See</u> FAC ¶¶ 56 ("[P]rior to plaintiff's arrest, the bank employees failed to advise the police of evidence that would have exculpated plaintiff . . . ."), 59.   Accordingly, the officers never deliberately disregarded facts known to them; "at worst they failed to investigate and learn facts that they never knew, after hearing a second version of the story they did not have a duty to credit." <u>Rennols v. City of New York</u>, No. 00 Civ. 6692 (NGG), 2003 WL 22427752, at *4 (E.D.N.Y. Oct. 23, 2003).  Thus, plaintiff's first argument against probable cause fails.

In a similar vein, plaintiff also argues that her innocent explanation of the events was sufficient to cast doubt on the veracity of the Capital One employees' statements such that the officers were required to conduct an investigation on the scene

before they could lawfully arrest her.  Pl. Br. at 9.  This argument
has no support in the law.  The Second Circuit has expressly held
that "the fact that an innocent explanation may be consistent with
the facts alleged does not negate probable cause and an officer's
failure to investigate an arrestee's protestations of innocence
generally does not vitiate probable cause."  Panetta, 460 F.3d at
395-96 (internal quotation marks, alterations, and citations
omitted); see Curley, 268 F.3d at 70 ("[W]e have found probable
cause where a police officer was presented with different stories
from an alleged victim and the arrestee."); Creighton v. City of
New York, No. 12 Civ. 7454 (PGG), 2017 WL 636415, at *27 (S.D.N.Y.
Feb. 14, 2017) (collecting cases).  "Although a better procedure
may have been for the officers to investigate plaintiff's version
of events more completely, the arresting officer does not have to
prove plaintiff's version wrong before arresting [her]."  Curley,
268 F.3d at 70.

    Moreover, the two cases plaintiff relies on — Bullard v. City
of New York, 240 F. Supp. 2d 292 (S.D.N.Y. 2003) and Wu v. City of
New York, 934 F. Supp. 581 (S.D.N.Y. 1996) — do not support
plaintiff's position.  In Bullard, the court's inability to find
that probable cause existed turned not on the plaintiff's
uninvestigated exculpatory explanation, but on the "myriad indicia

of unreliability" that were known to the arresting officers, who, according to the complaint, admittedly did not believe the complaining witnesses but detained the plaintiff for fourteen hours anyway. 240 F. Supp. 2d at 298-99. Similarly, in <u>Wu</u>, the court concluded that the officers did not have probable cause to arrest the plaintiff for the assault of a traffic officer because there were several circumstances that cast doubt on the traffic officer's story and bolstered the plaintiff's contrary claim that he was the victim and not the aggressor: namely, it was the plaintiff who called 9-1-1, the ambulance attendant detected no injuries on the officer but soreness on the plaintiff's chest, and an eyewitness corroborated plaintiff's account. 934 F. Supp. at 588. By contrast, as explained above, here there were no facts known to the arresting officers that substantiated plaintiff's protestations of innocence or called into question the Capital One employees' complaints.

In sum, the allegations in the FAC demonstrate that there was probable cause to arrest plaintiff. In arguing otherwise, plaintiff takes the untenable position that even though the police received an emergency call from three identified bank employees reporting an attempted robbery, the officers, when confronted with plaintiff's protestations of innocence, could not lawfully arrest

plaintiff until they conducted an on-the-spot investigation, including by seeking out and reviewing records not already in their possession. Existing case law in this Circuit imposes no such duty on police officers, and neither will we. Accordingly, plaintiff's false arrest and false imprisonment claims are dismissed.

## C.   Excessive Force/Assault and Battery

Plaintiff next asserts an excessive force claim under Section 1983 and an analogous New York state law claim for assault and battery. A federal excessive force claim is evaluated under the Fourth Amendment's "reasonableness" standard, which asks "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." Graham v. Connor, 490 U.S. 386, 397 (1989). The New York state law assault and battery standard is "substantially identical," Posr v. Doherty, 944 F.2d 91, 94-95 (2d Cir. 1991), except that under New York law, "[i]f an arrest is determined to be unlawful, any use of force against a plaintiff may constitute an assault and battery," 5 Borough Pawn, LLC. v. Marti, 753 F. Supp. 2d 186, 201 (S.D.N.Y. 2010). This exception is inapplicable where, as here, the plaintiff's arrest was supported by probable cause and so was lawful. As such, both of plaintiff's federal and state law force claims can be analyzed under the Fourth Amendment rubric.

-14-

It is well established that an officer has a "right to use some degree of physical coercion" to effect a lawful arrest. Graham, 490 U.S. at 396.  In evaluating the reasonableness of such force, courts consider, inter alia, "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." Kingsley v. Hendrickson, 576 U.S. 389, 397 (2015).  "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight."  Id.

Plaintiff bases her excessive force claims on the allegations that the City Defendants "confronted plaintiff with firearms drawn, forcibly seized plaintiff, twisted plaintiff's arms, [and] handcuffed plaintiff."[3]  FAC ¶ 54.  However, plaintiff has not specified a single physical injury, claiming only that the City Defendants' actions caused her to suffer "physical and emotional injuries" and to incur "medical expenses."  Id. ¶ 69.  Vague assertions of harm such as these are insufficient to support a

---

[3] There is no suggestion that the "twist[ing]" of plaintiff's arms was separate from her being placed in handcuffs.

claim of excessive force.  See Grytsyk v. Morales, 527 F. Supp. 3d 639, 655 (S.D.N.Y. 2021) ("[T]hreadbare and conclusory allegations of injury, without reference to specific physical injuries, do not suffice as a matter of law [for excessive force claims]."); see also Case v. City of New York, 233 F. Supp. 3d 372, 385-86 (S.D.N.Y. 2017) ("Courts in this Circuit have generally found that handcuffing does not suffice for an excessive force claim unless it causes some injury beyond temporary discomfort or bruising."); Higginbotham v. City of New York, 105 F. Supp. 3d 369, 376 (S.D.N.Y. 2015) ("Courts in this District have routinely dismissed excessive force claims where the plaintiff . . . did not allege any physical injuries."); Dunkelberger v. Dunkelberger, No. 14 Civ. 3877 (KMK), 2015 WL 5730605, at *17 (S.D.N.Y. Sept. 30, 2015) ("[A]n arrestee must prove some injury, even if insignificant, to prevail in an excessive force claim.").

Furthermore, what limited force the City Defendants may have used was justified under the circumstances.  The City Defendants were responding to the scene of what they reasonably believed was an ongoing bank robbery — a potentially violent and volatile situation that threatened the safety of an unknown number of bank employees and customers.  From the perspective of the officers without the benefit of hindsight, the perceived threat was serious.

Given these circumstances and the absence of specific injuries alleged, it is evident that what force the City Defendants used was reasonable under the circumstances to effectuate plaintiff's lawful arrest. Accordingly, plaintiff's state law assault and battery claim and corresponding Section 1983 claim must be dismissed.

**D.   Unreasonable Search**

Plaintiff also asserts a Section 1983 claim for an unreasonable search in violation of the Fourth Amendment. Although presumptively unreasonable, a warrantless search may be permissible under "a few specifically established and well delineated exceptions." United States v. Howard, 489 F.3d 484, 492 (2d Cir. 2007) (quoting Coolidge v. New Hampshire, 403 U.S. 443, 454-55 (1971)). A search incident to a lawful arrest is one such exception. See United States v. Delva, 858 F.3d 135, 148 (2d Cir. 2017). As discussed above, and although plaintiff argues otherwise, the arrest of plaintiff was lawful, so the search of her person at the Capital One premises was a permissible search incident to arrest.[4] Therefore, plaintiff's unreasonable search claim also must be dismissed.

---

[4] Even without probable cause, the search of plaintiff would have been lawful as a limited protective search for weapons, since the City Defendants had reasonable suspicion that plaintiff was committing a crime and was likely to be armed. See Terry v. Ohio, 392 U.S. 1, 28 (1968) (holding protective search of individuals accused of attempting a daylight robbery was lawful and concluding

-17-

**E.    Failure to Intervene**

Lastly, plaintiff brings a failure to intervene claim under Section 1983. "[L]aw enforcement officials have an affirmative duty to intervene to protect against the infringement of constitutional rights from conduct committed by other officers in their presence." Curley, 268 F.3d at 72. "An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know . . . that any constitutional violation has been committed by a law enforcement official." Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994) (citations omitted). However, "[a] failure to intervene claim does not exist when the underlying constitutional claim has been dismissed." Bridgeforth v. City of New York, No. 16 Civ. 273 (WHP), 2018 WL 3178221, at *12 (S.D.N.Y. June 28, 2018) (citing Bancroft v. City of Mount Vernon, 672 F. Supp. 2d 391, 406 (S.D.N.Y. 2009)). Since all of plaintiff's constitutional claims against the City Defendants are hereby dismissed, plaintiff's failure to intervene claim fails as well.

---

it was reasonable to assume that such a crime would likely involve the use of weapons).

## III. <u>CONCLUSION</u>

For the reasons stated above, the City Defendants' motion is granted[5] and the complaint is dismissed in its entirety as against the City Defendants.[6]  Since we have found no basis for any of the claims against Lt. Burgio, there is no predicate for a finding of liability against the City of New York.  <u>See</u> <u>Alexander v. Westbury Union Free Sch. Dist.</u>, 829 F. Supp. 2d 89, 112 (E.D.N.Y. 2011) ("<u>Respondeat superior</u> is not an independent cause of action, but a theory that must attach to an underlying claim.").  To the extent that this opinion does not resolve all of plaintiff's state law claims against the City Defendants, the Court declines to exercise supplemental jurisdiction over any remaining claims.  <u>See</u> 28 U.S.C. § 1367(c)(3) (providing a district court "may decline to exercise

---

[5] Having granted the City Defendants' motion on the merits, there is no need and the Court declines to reach the issue of whether Lt. Burgio is entitled to qualified immunity for plaintiff's Section 1983 claims.

[6] To the extent that the Court has not explicitly addressed any claims in the FAC against the City Defendants — for example, plaintiff's Section 1983 claims alleging Fifth and Fourteenth Amendment violations — "that is because such claims are effectively duplicative of the claims discussed above."  <u>Hays v. City of New York</u>, No. 14 Civ. 10126 (JMF), 2017 WL 782496, at *8, n. 4 (S.D.N.Y. Feb. 28, 2017) (dismissing equal protection claim without discussion since the same alleged conduct was already addressed under Fourth Amendment analysis); <u>see</u> <u>Albright v. Oliver</u>, 510 U.S. 266, 273 (1994) ("Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims.") (quoting <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989)); <u>e.g.</u>, <u>Zahrey v. City of New York</u>, No. 98 Civ. 4546 (DCP) (JCF), 2009 WL 1024261, at *9 (S.D.N.Y. Apr. 15, 2009) (collecting cases dismissing due process claims as duplicative).

supplemental jurisdiction over a claim" where "the district court
has dismissed all claims over which it has original jurisdiction").

The Clerk of Court is respectfully directed to terminate the
motion pending at ECF No. 21.

**SO ORDERED.**

Dated:    New York, New York
          March 16, 2022

_____
    NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

-20-